**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

RALF DANIEL HILLESLAND,    Chapter 7

                                        Case No. 19-25278 (CMG)

        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

DANIEL E. STRAFFI, Trustee,    Adv. Pro. No. 20-01023 (CMG)

        Plaintiff,

v.

AMERIS BANK d/b/a US PREMIUM
FINANCE; SANTANDER BANK, NA f/k/a
SOVEREIGN BANK, N.A.; and
PHILADELPHIA FEDERAL CREDIT
UNION,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

**STRAFFI & STRAFFI**
**Daniel E. Straffi, Esq.**
Attorney for Plaintiff

**SALDUTTI LAW GROUP**
**Rebecca K. McDowell, Esq.**
Attorneys for Defendant, Santander Bank, NA


**CHRISTINE M. GRAVELLE, U.S.B.J.**

## I.  Introduction

This matter comes before the Court by way of motion for summary judgment filed by Plaintiff, Daniel E. Straffi ("Straffi"), as Chapter 7 Trustee for the bankruptcy estate of Ralf Daniel Hillesland ("Debtor"), and cross-motion for summary judgment filed by Defendant, Santander Bank NA f/k/a Sovereign Bank NA ("Santander").  At issue is whether Santander's actions in executing upon a state court judgment lien were sufficient to perfect its lien as to the Debtor's real property.  Straffi contends that the lien is not perfected, and therefore he may avoid said lien pursuant to his "strong-arm" powers as trustee under 11 U.S.C. § 544(a).  Santander avers that its actions constitute a successful levy, and judgment must be entered in its favor.  The parties agree that there are no genuine issues of material fact, and that the matter is strictly a question of law that is resolvable through the motion for summary judgment.  For the following reasons, Straffi's motion is GRANTED and Santander's cross-motion is DENIED.

## II.  Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (K).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

## III.  Facts

On September 19, 2018 Santander obtained a judgment in the Superior Court of New Jersey, Burlington County vicinage, against Debtor in the amount of $65,111.51 (the "Judgment").

The Judgment was docketed as a statewide lien in New Jersey on October 5, 2018. The lawsuit also named Debtor's now-defunct business, Alfa Tronics, Inc. ("Alfa") as a defendant. Prior to the entry of the Judgment, on July 5, 2018, Alfa filed a Chapter 7 bankruptcy. Santander filed a claim in the amount of $52,551.58 in the Alfa bankruptcy. That bankruptcy case is still being administered.

On October 2, 2018 Santander delivered an information subpoena (the "Info Sub") to Debtor which was completed and returned on December 21, 2018 (the "Reply"). Debtor certified to the truthfulness of the Reply through his signature. The Reply noted that Debtor owned real property located at 11 Hattaras Court, Bordentown, New Jersey (the "Property"). The Property was listed with a purchase price of $230,000 and a balance due on the mortgage of "100+". The Reply did not indicate ownership of any other real property. It further listed his employer and salary. In response to the inquiry on the Info Sub regarding the names, addresses and account numbers of all bank accounts on which Debtor's name appears, the Reply stated that "all bank accounts are in joint names w/ wife," without providing any further information.

The Reply contained limited responses to each question presented by the Info Sub, with the exception of question #14, which asked whether the "present value of your personal property which includes automobiles, furniture, appliances, stocks, bonds, and cash on hand exceed[s] $1,000." Debtor did not check the box for either "yes" or "no" in reply to the question. The follow-up questions, which required an itemization of the personal property, were similarly left blank. In an answer to a separate question, the Reply did list ownership of a 2016 Honda CRV motor vehicle (the "Car"), which he stated was owned jointly with his wife.

In furtherance of collecting on the Judgment, on December 28, 2018, Santander filed a Writ of Execution in Burlington County which directed the county sheriff to "satisfy said

[Judgment] out of the personal property of the said Judgment debtor(s) within your County' and if sufficient personal property cannot be found then, subsequent to your levy and only after receipt of an order of the court pursuant to R. 4:59-1(d), out of the real property in your County belonging to the judgment debtor(s) . . ." The Writ of Execution was delivered to the Burlington County Sheriff in January 2019 with instructions to levy upon any bank accounts in the name of Debtor only which were located at a specifically identified Wells Fargo Bank branch and a specifically identified TD Bank branch. The sheriff was able to locate funds on hand at each of the banks, and on April 12, 2019 Santander obtained an Order for Turnover of those funds. The record does not reflect how Santander learned of the existence of these bank accounts, particularly in light of the representation by Debtor in the Reply that all of his bank accounts were held jointly with his wife, and the lack of any information in the Reply as to specific names, addresses, or account numbers of any bank accounts upon which his name appeared.

Santander also sought to collect upon the Judgment though garnishing Debtor's wages via a Writ of Wage Execution filed on March 20, 2019. The Burlington County Sheriff responded on April 8, 2019, indicating that Debtor had a prior garnishment, and that the Writ would be held until such debt was paid.

Thereafter, on April 19, 2019 Santander re-submitted the Writ of Execution to the Burlington County Sheriff with a cover letter instructing the Sheriff to levy upon Debtors "goods and chattels and real estate." On May 21, 2019 the sheriff served the Writ of Execution upon Debtor at the Property. The levy report issued by the sheriff indicated that he "[l]evied on the Personal Property and Real Estate and served the notice to debtor." It further indicated that Debtor refused to allow the sheriff entry to the Property, preventing the sheriff from preparing an inventory and issuing a constructive levy on personalty.

In response to Debtor's refusal to allow entry, Santander prepared a motion to remove locks and doors to be filed in state court (the "Entry Motion"). As of August 7, 2019, the date Debtor filed this bankruptcy, the Entry Motion had not been filed.

Debtor's bankruptcy schedules listed the Car as an asset owned solely by Debtor, with a value of $10,000 and no liens. Additionally, the Debtor's schedules listed ownership of assets described as "personal or household items" in the amount of $8,700. These assets included tools, household goods and furnishings, televisions and computers, miscellaneous collectables, and clothes.

Straffi was appointed Chapter 7 trustee on August 8, 2019. He filed a Notice of Assets in the bankruptcy case on November 26, 2019. The next day Santander filed a proof of claim in the amount of $62,945.05 based upon the Judgment. The proof of claim indicated that the claim was not secured.

This adversary proceeding was filed on January 16, 2020. After unsuccessful mediation, Straffi filed the present motion for summary judgment on June 2, 2020. Santander timely filed its cross-motion and oral argument was held on July 7, 2020 at which time this Court reserved its decision. After review of all filings and arguments, this decision is entered.

**IV.    Legal Analysis**

Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056). As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (internal quotation and citation omitted). At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." Knauss v. Dwek, 289 F. Supp. 2d 546, 549 (D.N.J. 2003), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, (1986). In doing so, the court must construe facts and inferences in a light most favorable to the non-moving party. *See* Am. Marine Rail NJ, LLC v. City of Bayonne, 289 F. Supp. 2d 569, 578 (D.N.J. 2003), *citing* Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, (1986).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact . . ." Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001), *citing* Celotex Corp., 477 U.S. at 323. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995), *citations omitted*. Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.

Trustee Powers

11 U.S.C. 544(a) is known as the "strong arm clause" of the Bankruptcy Code, providing that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Thus, a Chapter 7 trustee has the status of a hypothetical judicial lien creditor who has levied upon the debtor's property. In re Italiano, 66 B.R. 468 (Bankr. D.N.J. 1986). The status is senior to an actual judicial lien holder who has not levied, but junior to a valid lien holder who has properly levied on the property prior to the filing of the bankruptcy. Id. at 478.

Levy Upon Real Property

In New Jersey, a sheriff is required to first attempt to levy upon the personal property of a judgment debtor within the county before levying upon real estate. N.J.S.A. § 2A:17-1; *see also* Raniere v. I & M Investments, Inc., 159 N.J. Super. 329, 335 (Ch. Div. 1978), *aff'd* 172 N.J. Super. 206 (App. Div.); *cert. den.* 84 N.J. 473 (1980). Strict compliance with N.J.S.A. § 2A:17-1 is required. Id. It is incumbent upon the judgment creditor to "make a good faith attempt to ascertain the location of the judgment debtor's personalty within the county and supply this information to the sheriff along with the writ of execution," prior to levying against real property. Id. at 337. The test for good faith "is not whether all possible measures to locate personalty have been undertaken,

but rather has the judgment creditor exerted 'reasonable efforts' in good faith to locate personal property." Borromeo v. DiFlorio, 409 N.J. Super. 124, 137 (N.J. Super. App. Div. 2009). A court will invalidate a lien of a creditor who has failed to make a good faith effort. Matter of Silverman, 6 B.R. 991, 996 (D.N.J. 1980).

Courts addressing New Jersey law on levies have suggested that, prior to executing upon real property, a Sheriff must issue a writ of *nulla bona* indicating that a strict and diligent search has been made and no personal property has been located. Raniere v. I & M Investments, Inc., 159 N.J. Super at 338; *see also* In re Marvaldi, 99 Fed. Appx. 414, 416 (3d Cir. 2004). A court in this district has found that there is no such requirement to obtain a writ of *nulla bona* in the statute as written, and as such it is not a prerequisite to a valid levy on real property. *See* In re Mariano, 339 B.R 344, 353 (Bankr. D.N.J. 2006). Yet another court found that any such requirement of a writ of *nulla bona* is satisfied by a good faith attempt to locate, levy and execute on personalty. *See* In re McLaughlin, Case No. 03-23717, Adv. No. 03-1957 (KCF), at p. 7-8 (Bankr. D.N.J. April 19, 2004).

A simultaneous levy upon real and personal property is *per se* impermissible under New Jersey law. McLaughlin, at p. 10, *citing* In re Italiano, 66 B.R. at 479. The In re McLaughlin case involved two judgment creditors. The first judgment creditor issued a writ of execution which instructed the sheriff to take an inventory of and levy upon all personal property and levy upon real property. The second judgment creditor issued a writ which instructed the sheriff to satisfy the judgment out of the personal property, and if sufficient personal property cannot be found, then out of the real property. Id. (emphasis added). The court found that the first judgment creditor's writ constituted an impermissible simultaneous levy. But, the language of the second judgment creditor's writ was sufficient to satisfy the order of levy requirements in N.J.S.A. § 2A:17-1. Id.

Although there are no precisely defined elements for a finding that a judgment creditor has made a good faith attempt to locate personalty, the starting point for such an attempt is in the New Jersey Court Rules, which outline the process for enforcing judgments. *See* N.J.R. 4:59-1. Specifically, the rules allow for discovery by way of deposition or information subpoena. N.J.R. 4:59-1(f). The New Jersey Supreme Court has held that a post-judgment deposition where the judgment debtor responded negatively or evasively to the questions constituted a good faith effort to discover personalty. Pojanowski v. Loscalzo,, 127 N.J. 240, 242 (1992). Similarly, in In re Mariano, the court found that the information certified to in an information subpoena had the same import as deposition testimony. In re Mariano, 339 B.R. at 349. The judgment debtor in In re Mariano was in jail when she answered an information subpoena and remained there when the writ of execution issued. In her response, she stated that she did not have personal property exceeding $1,000, a car, or other personal property. Id. at 346. The In re Mariano court found that the judgment creditor made a good faith effort to discover personalty, and therefore had properly levied upon real property when it provided the county sheriff with a writ of execution with instructions to satisfy its judgment out of the debtor's real property. In its instructions to the sheriff, the judgment creditor included a copy of Ms. Mariano's response to the information subpoena and noted that her response "indicate[d] that in effect . . . she owns no personal property against which [the] Writ may be executed." Id. at 346-47.

Courts have found an absence of a good faith effort where a judgment creditor fails to participate in the discovery process. In the Raniere case the creditor conducted no supplementary proceedings to ascertain the nature and value of any property owned by the debtor. Raniere v. I & M Investments, Inc., 159 N.J. Super at 337. The court noted the New Jersey Court Rules that were "specifically designed to provide the judgment creditor with a fast and inexpensive method of

discovering the assets of the judgment [debtor]," were forgone in lieu of a levy initially and exclusively against real property, and concluded that "[s]uch a practice cannot be tolerated." Id.

Further, following post-judgment discovery, the judgment creditor has the responsibility to deliver the writ of execution with instructions to levy. Because the writ is in the creditor's exclusive control, the sheriff must then execute according to plaintiff's reasonable instructions. In re Mariano, 339 B.R. at 353-54, *citing* Vitale v. Hotel California, Inc., 184 N.J. Super. 512, 519-20 (Law Div. 1982).

While a judgment creditor may be entitled to rely upon discovery responses, they are not entitled to rely upon a judgment debtor's refusal to allow entry into a premises as evidence of a lack of personalty. As stated by Judge Ferguson in the In re McLaughlin case:

> Courts have been consistent in their position that denial of entry into a judgment debtor's home is not the equivalent of failing to locate any personal property after a diligent search. *See*, *e.g.*, Daeschler v. Daeschler, 214 N.J. Super. 545, 556-57 (App. Div. 1986); In re Italiano, 66 B.R. 468, 479 (Bankr. D.N.J. 1986) ("The fact that the sheriff was denied access to the debtor's residence by the debtor's son for purposes of performing the personal property levy cannot validate the levy on the debtor's real property made the same date.") New Jersey courts have recognized that there is another option when judgment debtors refuse entry upon their premises for a levy – the creditor can return to the court and seek an order permitting entry. Spiegel, Inc. v. Taylor, 148 N.J. Super. 79 (Bergen County Ct. 1977).

In re McLaughlin, at p. 11.

In In re McLaughlin, the court found that the second judgment creditor (whose writ language had satisfied the statutory order of levy requirements) had not properly perfected his levy upon real property where the sheriff levied on three parcels of real property immediately after being refused entry to the debtor's residence to inventory personal property. Id. In In re Italiano, the judgment creditor conducted discovery as to the debtor's assets but did not ask any questions

regarding ownership of furniture, appliances, and other household goods. In re Italiano, 66 B.R. at 478-79. The judgment debtor refused entry to the sheriff, who advised the judgment creditor that he was "unable to levy upon the personal property . . . because entry was refused," but that on that same day he "levied upon the real estate of [the debtor]." Id. at 470. The In re Italiano Court noted that the creditor had moved in state court for an order allowing the sheriff to break the locks but the motion had not yet been granted. Id. at 479. Consequently, the Court held that the creditor "did not make a good faith effort to locate, levy upon and execute against the debtor's personal property and was not justified in simultaneously levying upon and executing against the debtor's real property." Id.

## V.    Analysis

Here, Santander engaged in the discovery process by way of the Info Sub. It takes the position that reliance on the Reply, which left questions regarding personal property blank, constitutes a good faith effort to locate personal property. The Writ of Execution did contain language directing the sheriff to satisfy the judgment first out of the Debtor's personal property, and then out of his real property, mirroring the language that the In re McLaughlin court found acceptable in satisfying the order of levy requirements in that case. Santander urges this Court to similarly find the order of levy requirements have been met.

Santander relies heavily on the In re Mariano case in support of its cross-motion. It notes that the debtor in In re Mariano also left certain answers blank on her information subpoena, and that the judgment creditor there relied on the information subpoena in directing the sheriff to levy upon that debtor's real property. The In re Mariano court found that N.J.S.A. § 2A:17-1 contained no requirement that a writ of *nulla bona* be issued prior to a levy on real estate. Based upon Judge

Wizmur's well-reasoned analysis, this Court agrees that there is no explicit requirement for the issuance of a writ of *nulla bona*.

But the judgment debtor in In re Mariano had been jailed for over a year when she certified that she had no personal property that exceeded a certain value. Given her circumstances, it was reasonable for the judgment creditor to assume that her answer was accurate. There, the judgment creditor informed the sheriff that it had concluded as much and explained its reasoning. Further, the judgment creditor in In re Mariano engaged in additional investigation by commissioning two investigative reports, both pre-and post-judgment. The reports concluded that Mariano's only tangible asset was her home. The reports also provided additional information that Mariano had not provided. Notably, Mariano checked "no" as to whether she owned the property in which she resided (she was incarcerated at the time). Even though she did not disclose her ownership of real property, the judgment creditor did not rely on Mariano's blank answer to assume that she did not own real property. The judgment creditor's further investigations revealed her ownership.

Here, Debtor left blank the answer to whether he had any personal property. Santander had no additional information to indicate whether the absence of an answer was an indication that Debtor did not own any such property, or whether his failure to answer was an oversight or intentionally evasive. Knowing what Santander knew about Debtor's circumstances, it was unreasonable to conclude that Debtor had no personal property. In fact, Debtor had provided information about a vehicle, Santander had discovered and levied against bank accounts, and Debtor resided in a house that he owned. Santander had a duty to probe further to identify and sell personal property before it could validly levy against the Property. Further investigation would have at the very least uncovered the personal property Debtor listed in his schedules. Instead, Santander's instructions accompanying the writ of possession directed the sheriff to levy upon

Debtor's "goods and chattels and real estate" (emphasis added), without providing any information as to what those goods and chattels were. As stated in In re Mariano, it is the creditor's responsibility to "deliver the writ of execution to the sheriff with instructions regarding the location and identity of property to be levied on." In re Mariano, 339 B.R. at 354. Santander's instructed the sheriff to levy upon goods and chattels. If Santander intended to rely solely on the Reply to the Info Sub, then, like the creditor in In re Mariano, it could have instructed the Sheriff to execute directly against the real property. It cannot take inconsistent positions where, at the time of execution it instructed the sheriff to levy upon personalty, but now it posits that no levy on personalty was needed because of its good faith belief that none existed.

Further, Santander cannot rely on Debtor's refusal to allow entry to the sheriff as proof that Debtor had no personal property to satisfy the writ. The sheriff's levy report did not indicate that there was no personalty to levy upon. Instead, it stated that it had levied upon Debtor's "personal property and real estate," while also noting that the person served "refused to allow inventory and constructive levy to be performed inside." It is unclear how the sheriff was able to "levy" without access to the goods inside. At the very least, without access he was unable to ascertain whether there was "sufficient personal property" to satisfy the judgment, as is required prior to a levy on real property.

Santander implicitly acknowledged this by preparing the Entry Motion, presumably to gain access to the Property for purposes of taking an inventory of Debtor's goods. This is precisely the procedure that cases like Spiegel and In re Italiano contemplate after a sheriff is denied access to a property. Santander cannot now advance a different theory to avoid the requirements to levy real property.

Because the sheriff was unable to access the residence, he could not perform the levy on the personal property of the debtor. Without a levy on the personal property, by statute there could be no valid levy on the real property.

Finally, it is apparent that Santander only relied on the Reply to an extent. This is illustrated by the distinction in its treatment of Debtor's bank accounts versus Debtor's vehicle. In the Reply, Debtor acknowledged that he owned bank accounts and the Car. For each asset, he listed that they were jointly owned with his wife. Despite that representation, Santander was able to locate two bank accounts solely in Debtor's name upon which to levy. At the same time, Santander took no action as to the Car. Despite Debtor's representations in the Reply, his bankruptcy indicates that he solely owns the Car. Santander's cross-motion indicates that it is still unsure of the true ownership status of the Car. Santander cannot pick and choose to rely on the Reply to avoid inventorying household assets, but not rely on the Reply when seeking out more liquid assets such as cash from bank accounts.

## VI.  Conclusion

For these reasons, this Court cannot conclude that Santander's levy was properly executed. The Court finds that Santander did not make a good faith effort to locate Debtor's personal property before it levied against the Property. Debtor's blank answer to the question about personal property in the Reply, and his subsequent refusal to allow entry to the sheriff did not relieve Santander of the requirement to first levy upon Debtor's personalty. By directing the sheriff to levy upon Debtor's goods and chattels, Santander was required to "see through" the process of accessing and inventorying those goods. Straffi's motion for summary judgment is hereby GRANTED and Santander's cross-motion for summary judgment is DENIED.

Dated: August 17, 2020

/s/Christine M. Gravelle
United States Bankruptcy Judge